# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JERRY WAYNE SHUE, JR., | ) | 1:05-CV-0504 AWI JMD HC |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| D.K. SISTO, Warden, | ) | |
| Respondent. | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Merced County Superior Court. A jury found Petitioner guilty of first degree murder, burglary of an inhabited dwelling, assault with a firearm, and possession of a firearm by a felon. The trial court sentenced Petitioner to a term of 80 years to life for the murder and its enhancements, a consecutive term of 10 years for the assault with a firearm and its enhancements, and concurrent terms for the burglary and possession of a firearm and their enhancements. (Answer at 1-3; CT at 516-19, 527-31.)

Petitioner appealed to the California Court of Appeal. The court struck one enhancement relating to the burglary conviction and stayed another, but otherwise affirmed the judgment.

1  (Answer at 3; Lodged Docs. 1-4.)

2  Petitioner filed a petition for review in the California Supreme Court. The court summarily
3  denied review. (Answer at 3; Lodged Docs. 7-8.)

4  Petitioner filed a petition for writ of habeas corpus and a supplemental petition for writ of
5  habeas corpus in the Merced County Superior Court. The court denied the petitions. (Answer at 3;
6  Lodged Docs. 9-12.)

7  Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. The
8  court summarily denied the petition. (Answer at 3; Lodged Docs. 13-14.)

9  Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. The
10  court summarily denied the petition. (Answer at 3; Lodged Doc. 15.)

11  On April 15, 2005, Petitioner filed a petition for writ of habeas corpus in this Court. On
12  January 30, 2006, Petitioner filed the instant amended petition. The amended petition raises the
13  following four grounds for relief: 1) prosecution's suppression of favorable evidence violated
14  Petitioner's due process rights; 2) ineffective assistance of trial counsel; 3) use of CALJIC
15  instruction 5.54 violated Petitioner's due process rights; and 4) trial court's failure to instruct the jury
16  on self-defense as a complete defense violated Petitioner's right to a fair trial and due process rights.

17  On July 30, 2007, Respondent filed an answer to the amended petition.

18  On January 28, 2008, Petitioner filed a traverse to the answer.

19  **FACTUAL BACKGROUND**[1]

20  The victim, James Covert, was a bouncer at a Merced nightclub. Covert was married to
21  Petitioner's sister, Charlotte Covert. After an evening of drinking at the club, Petitioner got into an
22  altercation with another bar patron. Covert took steps to get Petitioner to leave, and, while being
23  restrained by Covert outside the club, Petitioner was assaulted by another man. Covert stopped the
24  attack, the police arrived, and Petitioner was arrested.

25  After he was released from jail, Petitioner went home and got a rifle. He told his mother-in-
26  law he had been "rat-packed" by Covert. Petitioner drove to Covert's house. Petitioner broke in the

27

28  [1] The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of May 5, 2003. (Lodged Doc. 4.)

front door of the house, saying, "Where is he?" Petitioner pointed the rifle at Charlotte and at her 16-year-old son, Brian. After Covert came out of a bedroom holding a rifle by the butt end and walked toward Petitioner, the two men fought in the entryway. Charlotte and Brian heard a single gunshot; Petitioner left. From outside Charlotte heard Petitioner say, "I hope you die, you son of a bitch." Covert died of a large-caliber gunshot wound to his left chest.

Petitioner's defense included testimony that Covert had been known to say, "Why fight 'em, I'll just shoot 'em," and always carried a gun. Mary Barajas, Petitioner's sister, testified that Brian told her that Petitioner had been retreating when he shot Covert and had remarked "No, dude. Don't," before firing his weapon. Brian denied ever having said this to Barajas.

## DISCUSSION

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Merced County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

1  Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

2  The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death
3  Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).
4  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of
5  the claim "resulted in a decision that was contrary to, or involved an unreasonable application of,
6  clearly established Federal law, as determined by the Supreme Court of the United States" or
7  "resulted in a decision that was based on an unreasonable determination of the facts in light of the
8  evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at
9  70-71; see Williams, 529 U.S. at 413.

10  As a threshold matter, this Court must "first decide what constitutes 'clearly established
11  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
12  *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court
13  must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time
14  of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words,
15  'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set
16  forth by the Supreme Court at the time the state court renders its decision." Id.

17  Finally, this Court must consider whether the state court's decision was "contrary to, or
18  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,
19  *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant
20  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
21  question of law or if the state court decides a case differently than [the] Court has on a set of
22  materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.
23  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court
24  identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies
25  that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

26  "[A] federal court may not issue the writ simply because the court concludes in its
27  independent judgment that the relevant state court decision applied clearly established federal law
28  erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A

federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III. Review of Petitioner's Claims**

**A. Ground One**

Petitioner argues that his rights were violated when the prosecution failed to turn over readily available evidence showing that its main witness, Charlotte Covert, had a prior conviction for welfare fraud. Petitioner claims that the prior conviction could have been used to undermine Ms. Covert's credibility, as it was a crime of moral turpitude.

This claim was presented in petitions for writ of habeas corpus to the Merced County Superior Court, the California Court of Appeal, and the California Supreme Court. Each petition was denied. (Lodged Docs. 9-15.) When the state courts reach a decision on the merits but provide no reasoning to support their conclusion, we independently review the record to determine whether the state courts clearly erred in their application of Supreme Court law. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). However, although we independently review the record, we still defer to the state courts' ultimate decision. Id.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). "To

succeed on a *Brady-Bagley* claim, a movant must demonstrate that (1) the prosecution withheld exculpatory or impeachment evidence; (2) the prosecution knew or should have known during the proceedings of the evidence's existence; (3) the defendant did not possess the evidence, nor could he have obtained it with reasonable diligence; and (4) the evidence was material." U.S. v. Zuno-Arce, 25 F.Supp.2d 1087, 1116 (C.D. Cal. 1998); accord U.S. v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991); U.S. v. Dupuy, 760 F.2d 1492, 1502 n.5 (9th Cir. 1985).

The state courts did not clearly err in their application of Supreme Court law, as Petitioner has not shown that the prosecution knew or should have known about Ms. Covert's prior conviction or that he could not have obtained the information using reasonable diligence. (See Lodged Doc. 9 at 4; Lodged Doc. 11, Exs. 1-2.) Further, given the totality of the evidence, Petitioner has not shown a reasonable probability that the introduction of the prior conviction would have affected the ultimate outcome of the trial.

**B.  Ground Two**

Petitioner argues that his trial counsel was ineffective in failing to 1) obtain and introduce evidence showing the prior conviction of Charlotte Covert; 2) impeach Charlotte Covert with her prior inconsistent statements; 3) introduce evidence showing the actual amount of alcohol consumed by Petitioner; and 4) provide Petitioner with a complete copy of the trial records and object to certain sentencing errors.

These claims were presented in petitions for writ of habeas corpus to the Merced County Superior Court, the California Court of Appeal, and the California Supreme Court.  Each petition was denied.  (Lodged Docs. 9-15.)  When the state courts reach a decision on the merits but provide no reasoning to support their conclusion, we independently review the record to determine whether the state courts clearly erred in their application of Supreme Court law.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although we independently review the record, we still defer to the state courts' ultimate decision.  Id.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive the defendant of a fair trial, one whose result is reliable. Id. at 688. The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S. 648, 659 & n.25 (1984). Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of *Williams v. Taylor*, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

1. Evidence of prior conviction

Petitioner argues that his counsel was ineffective in failing to obtain and introduce evidence

showing the prior conviction of Charlotte Covert. Petitioner claims that the introduction of the prior conviction would have undermined Ms. Covert's testimony.

Petitioner has not shown, however, that it would have been strategically sound for counsel to attempt to undermine Ms. Covert's testimony or that doing so would have resulted in a more favorable verdict. Ms. Covert testified that she had previously stated that Petitioner was drunk prior to the incident, that he did not threaten the victim at the bar, and that his pupils were dilated when the incident took place. (RT at 390-95, 402.) She also testified that the victim commonly had firearms, that he confronted Petitioner with a firearm, that the fatal shot occurred during a struggle in which the victim was attempting to strike Petitioner with a rifle, and that Petitioner's statement that he hoped the victim would die was just him "running his mouth like he always did." (RT at 385-86, 413-18.) This testimony generally supported defense counsel's argument that Petitioner only committed manslaughter because he acted with an actual but unreasonable belief that he was defending himself in a dangerous situation. (RT at 578-79.) It was therefore reasonable for counsel to avoid attacking Ms. Covert's credibility. Further, given the totality of Ms. Covert's testimony and the testimony of other witnesses, Petitioner has not shown a reasonable probability that the introduction of the prior conviction would have had any effect on the outcome of the trial.

2. Prior inconsistent statements

Petitioner argues that his counsel was ineffective in failing to impeach Charlotte Covert with certain prior inconsistent statements. Petitioner argues that counsel should have impeached Ms. Covert regarding 1) whether she saw Petitioner stumbling around drunk; 2) whether Petitioner accused the victim of kicking him and whether the victim did so; and 3) whether Ms. Covert was pushed into the bathroom during the incident.

i) Whether Petitioner was stumbling

The following exchange occurred during defense counsel's cross-examination of Ms. Covert:

Q: Let me show you part of a transcript of an interview by Detective Clair to you on September 5th of the year 2000, about a week after the incident occurred, and just ask you to read the top four or five lines here.

. . .

Q: Does that refresh your recollection?

1    A: Okay.

2    Q: Okay. Detective Clek – Detective Clair asked you when you got there, what was his condition. Was he drunk? What was your response[?]

3

4    A: Uh huh.

5    Q: That he was drunk.

6    A: Yeah.

7    Q: Okay. And he asked you, was he drunk to the point where he was stumbling around, was he able to, and you said "yeah."

8    A: I don't – I – Jerry wasn't stumbling around. Jerry was sitting at the bar.

9    . . .

10    Q: Thank you. So Jerry's there at the bar –

11    A: Sitting at the bar.

12 (RT at 392-93.) Petitioner has not shown that counsel was deficient, as the record shows that the

13 jury was made aware that Ms. Covert had previously stated that Petitioner was stumbling around

14 drunk. Further, Petitioner has not shown a reasonable probability of a more favorable result if

15 counsel had attempted to further impeach Ms. Covert.

16          ii) Whether Petitioner was kicked

17    The following exchange occurred during defense counsel's cross-examination of Ms. Covert:

18    Q: Do you recall telling [Officer Ortiz] that Jerry was kicked in the chest several times?

19

20    A: I – I –

21    Q: Before your husband broke it up?

22    A: No. I never said that. No.

23    Q: Okay. Did you tell him that Jerry had accused Jim of kicking him while he was going down[?]

24    A: I – I might have. I don't know. I don't remember that night.

25    Q: Do you recall Jerry accusing Jim of kicking him while he was down?

26    A: I remember something to the statement where he thought Jim and John had jumped him.

27

28 (RT at 398-99.) Petitioner has not shown a reasonable probability that the result of his trial would have been different even if counsel had explicitly impeached Ms. Covert with her prior statements

that Petitioner had been kicked and that Petitioner accused the victim of kicking him.

### iii) Whether Ms. Covert was pushed into the bathroom

At trial, Ms. Covert testified that, as her husband was approaching Petitioner, he pushed her toward the "bathroom divider," which was by the bathroom door, but he did not push her into the bathroom. (RT at 373-74, 413.) Petitioner claims that Ms. Covert previously stated to Officer Ortiz that she was pushed into the bathroom. Even assuming such a statement was made, and that it could have been used to impeach Ms. Covert, Petitioner has not shown a reasonable probability that the inconsistent statement would have affected the outcome of his trial.

### 3. Amount of alcohol consumed

Petitioner argues that trial counsel was ineffective in failing to introduce evidence showing the actual amount of alcohol consumed by Petitioner. Petitioner claims that there is evidence showing that Long Island Iced Teas contain more than one ounce of alcohol.

Charlotte Covert, a cocktail waitress at the bar where Petitioner consumed the alcohol in question, testified that the Long Island Iced Teas consumed by Petitioner contained a total of one ounce of alcohol each. (RT at 354, 390-91, 422.) Petitioner contends, however, that they could have contained more. He relies on recipes obtained from the Internet that call for at least three ounces of alcohol and expert testimony given at his sanity hearing that a Long Island Iced Tea is generally made with two ounces of alcohol. (Petition, Ex. C; RT at 739.)

Petitioner has not shown a reasonable probability of a different outcome if counsel had presented the additional evidence regarding the recipes. Ms. Covert's testimony addressed the pertinent question of how much alcohol was present in the drinks that were actually served to Petitioner. In contrast, the expert testimony and recipes obtained from the Internet only generally address the amount of alcohol that may be used to make a Long Island Iced Tea. Further, even assuming the drinks contained two ounces of alcohol each, the expert on blood alcohol levels testified that Petitioner's blood alcohol level would have still been zero at the time of the incident. (RT at 736-40.)

### 4. Post-trial errors

Petitioner argues that his trial counsel was ineffective because he failed to provide Petitioner

with a complete copy of the trial records. Petitioner further argues that counsel was ineffective in failing to object to certain errors made during sentencing.

Petitioner has not demonstrated prejudice resulting from counsel's alleged failure to turn over a complete copy of the trial records, as Petitioner does not identify any specific information that may have been withheld or explain how such information would have affected his case. Further, he has not demonstrated prejudice resulting from counsel's failure to object at sentencing, as Petitioner acknowledges that the Court of Appeal modified his sentence by striking one of the enhancements in question and staying the other. (Petition at 12; Ex. F.)

### C.  Grounds Three and Four

Petitioner argues that his rights were violated because the jury was improperly instructed that, because Petitioner was the initial aggressor, he had to expressly notify the victim he was withdrawing to regain the right to self-defense. Petitioner claims that a proper instruction would have informed the jury that Petitioner regained the right to self-defense if the victim reasonably understood from the circumstances that Petitioner was withdrawing. Petitioner further argues that the jury should have been instructed on perfect self-defense in addition to imperfect self-defense.

These claims were presented in an appeal to the California Court of Appeal, which affirmed the judgment as to these claims. (Lodged Docs. 1-4.) The issues were then raised in a petition for review to the California Supreme Court, which summarily denied review. (Lodged Doc. 7.) The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claims, the Court of Appeal found that the jury was properly instructed on the availability of self-defense to an initial aggressor. It further found that the error in failing to instruct the jury on perfect self-defense was harmless as the jury's finding that Petitioner was guilty of first degree murder, and the jury's rejection of any lesser offenses, showed that it rejected the factual basis of any type of self-defense. (Lodged Doc. 4 at 2-5.)

To obtain federal habeas relief on the basis of an incorrect jury instruction, a petitioner must show more than that the instruction was undesirable, erroneous, or even universally condemned; the

question is whether the instruction by itself so infected the entire trial that the resulting conviction violated due process. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Id.  Further, habeas relief based on trial error is only available if the error had "substantial and injurious effect or influence in determining the jury's verdict." Calderon v. Coleman, 525 U.S. 141, 145 (1998); see also Inthavong v. Lamarque, 420 F.3d 1055, 1059 (9th Cir. 2005) ("To grant relief where a state court has determined that a constitutional error was harmless, we must both determine (1) that the state court's decision was 'contrary to' or an 'unreasonable application' of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under *Brecht* from the constitutional error.").

CALJIC 5.54, as given, may have been ambiguous, or even erroneous, regarding the requirements for an aggressor to regain the right of self-defense under California law. See People v. Hernandez, 111 Cal.App.4th 582, 589 (2003) (finding same version of CALJIC 5.54 to be ambiguous and its use to be error); People v. Nem, 114 Cal.App.4th 160, 164-67 (2003) (finding no error in using same version of CALJIC 5.54).  Petitioner has not shown, however, that the instruction so infected the entire trial that his conviction violated due process.  He also has not shown that the instruction had a substantial and injurious effect on the verdict, as the jury rejected imperfect self-defense and found Petitioner guilty of first degree murder, which necessarily included a finding that Petitioner carefully thought about and considered his course of action beforehand. See CALJIC 8.20 (stating that first degree murder must be premeditated, meaning "considered beforehand," and deliberate, meaning "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action").  This finding of premeditation and deliberation forecloses the possibility that the jury accepted that Petitioner acted only in response to the fear of imminent peril, as required for self-defense, but found that he failed to sufficiently convey withdrawal from his initial aggression. See CALJIC 5.17 (stating that imperfect self-defense is acting with an unreasonable belief in the necessity to defend against imminent peril, meaning peril that is "apparent, present, immediate and must be instantly dealt with").

Similarly, Petitioner has not shown that the failure to instruct the jury on perfect self-defense

had a substantial and injurious effect on the verdict, as the jury found that Petitioner's actions were carefully thought out and considered. This is inconsistent with finding that Petitioner acted solely in response to imminent peril as required to establish either type of self-defense. See CALJIC 5.12, 5.13, 5.17.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 23, 2008             /s/ John M. Dixon**
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE